UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States,

    –v–

Juan Garcia,

              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/26/22

4-cr-603 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Defendant Juan Garcia filed motions seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). For the reasons that follow, his motions are DENIED.

**I.    BACKGROUND**

    On March 29, 2005, Defendant pleaded guilty, without a plea agreement, to participating in a conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846 based on his leadership role in a drug-distribution network. June 22, 2005 PSR ¶¶ 2, 4.[1] Between 2003 and 2004, Mr. Garcia coordinated the transportation and distribution of over 1,000 kilograms of cocaine and millions of dollars in drug proceeds. *See id.* ¶ 14. After Mr. Garcia pleaded guilty, several of his co-defendants proceeded to trial. At that trial, a cooperating witness testified that he made between 12 and 15 trips for Mr. Garcia and his co-defendants and had transported more than 1,000 kilograms of cocaine and more than $20 million in proceeds. *Id.* ¶ 14. As part of the conspiracy, Mr. Garcia provided the funds for a stash house in California.

---

[1] The factual recitations set forth in the PSR were adopted without objection at Mr. Garcia's sentencing. Sent. Tr. at 9.

*Id.* ¶ 13. DEA Agents also recorded numerous calls between Mr. Garcia and other members of the distribution network. *Id.* ¶¶ 15-19.  In one recorded call from February 2004, Mr. Garcia and a co-defendant discussed $985,000 that had been seized by DEA agents after receiving information that the organization was transporting drug proceeds from New York to California. *Id.* ¶ 17.  Mr. Garcia continued his role in the organization after this seizure and was arrested in July 2004. *See id.* ¶¶ 18-20. Mr. Garcia committed this offense while serving probation for a state-law offense of receiving stolen property in California. *Id.* ¶¶ 38, 41.

After presiding over the three-week trial of Mr. Garcia's co-defendants, Judge Baer imposed Mr. Garcia's sentence on July 13, 2005.  Judge Baer adopted the PSR's offense-level calculation, including a four-level leadership enhancement, a three-level reduction for acceptance of responsibility, and a base level of 38, pursuant to U.S.S.G. § 2D1.1, because the offense involved 150 or more kilograms of cocaine. Sent. Tr. at 24-28.  Judge Baer described the then-existing 150 kilogram threshold as "minimal" relative to Mr. Garcia's offense. *Id*. at 26-27.  Accordingly, the applicable Guidelines range was 292 to 365 months' imprisonment. *Id*. at 24, 27.  Judge Baer ultimately imposed the lowest end of the guidelines, 292 months.  *Id*. at 27. In doing so, he highlighted Mr. Garcia's leadership role in this "very serious" crime. *Id*. at 24; *see also id. at* 27 ("If you know anything about me you will know I don't always agree with the Government—but in this instance, I think probably if there was a leader that's here, you and your co-defendant are it.").  Judge Baer also discussed the cooperating witness's testimony regarding the quantity of drugs involved in the conspiracy:

> With respect to the enhancements that we talked about, the initial offense level that was constructed on the basis of the 150 kilos or more, there was just – I mean, there was so much testimony about that during the course of the trial and the trips that the informant took, clearly in my view, at your overall instruction, and the amount of drugs that he carried to and from the west coast to the east coast and the money brought back, that I think 150 kilos which happens, I guess, to be at the heavy end of what the guidelines

>provide is, to some extent, minimal in your case because, if you heard or read that testimony, you will see that there was testimony about 1,000 or 1,2000 kilos of narcotics that were transported and that you are, in fact, as I think your allocution suggests, at least aware on the part of the conspiracy.

*Id*. at 26-27.  As to Mr. Garcia's involvement with the stash house, Judge Baer described that as the "nail in the coffin." *Id*. at 27.  And while Judge Baer acknowledged that the Guidelines term was "unconscionable" in his opinion, he ultimately considered the sentence to be "the most appropriate." *Id*. at 26.

Defendant appealed, arguing that Judge Baer erred in imposing a Guidelines sentence "based on facts-*i.e.,* drug quantity-that were 'not proven beyond a reasonable doubt' or admitted by the defendant during his guilty plea allocution" and "improperly considered at sentencing the hearsay testimony of a cooperating witness who testified at the trial of Garcia's co-defendants." *United States v. Garcia*, 167 F. App'x 259, 260-61 (2d Cir. 2006).  The Second Circuit rejected both arguments and upheld Mr. Garcia's sentence.  *Id.*  Mr. Garcia's subsequent petition to vacate his sentence pursuant to 28 U.S.C. § 2255 petition was also denied.  *Garcia v. United States*, No. 13-cv-3040-GHW, 2014 WL 6632969 (S.D.N.Y. Nov. 24, 2014).

As for the instant motions, Defendant submitted a request to the warden on July 9, 2020, asking that he submit a motion for compassionate release on his behalf. Dkt. No. 252 at 2. More than 30 days elapsed without a response, and Mr. Garcia filed a *pro se* motion for compassionate release on August 14, 2020. Dkt. No. 232.  On February 21, 2021, Mr. Garcia filed a second *pro se* motion for a sentence reduction.  Dkt. Nos. 239, 242.  The Government opposed these motions, and Mr. Garcia filed reply in support of his *pro se* compassionate release motion.  Dkt. Nos. 234, 237, 244.  This Court appointed counsel for Mr. Garcia's motions on July 29, 2021. Dkt. No. 246.  Defense counsel filed a supplemental motion on November 5, 2021, Dkt. No. 252,

which the Government opposed, Dkt. No. 253. Counsel filed a reply in support on December 13, 2021. Dkt. No. 257.

## II. DISCUSSION

### a. Motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2)

Defendant first moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 of the Sentencing Guidelines. Amendment 782, which was made retroactive by Amendment 788, lowered the penalties for most drug offenses by reducing the offense levels by two points on Section 2D1.1's Drug Quantity Table. At the time of Mr. Garcia's sentencing, the maximum drug-quantity threshold for cocaine was 150 kilograms. U.S.S.G. § 2D1.1(c)(1) (2004). Amendment 782 to § 2D1.1(c) raised the maximum threshold for cocaine to 450 kilograms. *See* U.S.S.G. Supp. App. C at 64-74 (2014); U.S.S.G. § 1B1.10(d) (2014).

A district court "may modify a sentence" pursuant to 18 U.S.C. § 3582(c)(2) where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *United States v. Valencia-Lopez*, 792 F. App'x 846, 847 (2d Cir. 2019) (quoting 18 U.S.C. § 3582(c)(2)). Courts follow a two-step approach in considering a Section 3582(c) motion. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon v. United States*, 560 U.S. 817, 827 (2010). Section 1B1.10 "requires the court to begin by 'determining the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting U.S.S.G. § 1B1.10(b)(1) (alteration omitted)). If an amendment would not affect the defendant's sentencing range even if it had been in effect at the time of sentencing, then the defendant is not eligible for

4

a reduction. U.S.S.G. § 1B1.10(a)(2)(B) ("A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment . . . does not have the effect of lowering the defendant's applicable guideline range."). If a defendant is eligible, however, then the court proceeds to step two of the inquiry and "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

Defendant's application fails at the first step. Defendant argues that he is eligible for a sentence reduction because Judge Baer "made no specific factual findings as to what amounts were applicable to Mr. Garcia, other than to conclude that it was more than 150 kilograms" at his sentencing. Dkt. No. 252 at 3-4. Thus, under Amendment 782, Mr. Garcia's drug-quantity level would drop from 38 to 36, resulting in a "new sentencing guideline recommendation of 235 to 293." *Id*. But the Second Circuit has instructed that a specific factual finding of drug weight by the sentencing court is not required. Rather, this court may make factual findings regarding drug quantity that are "supported by the record and consistent with the [sentencing] court's prior factual determinations." *Valencia-Lopez*, 792 F. App'x at 849 (rejecting argument that district court erred "because the court had made no explicit drug quantity determination at sentencing"); *see also United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014) ("[N]othing prevents a district court from making new findings of fact when ruling on a § 3582(c)(2) motion, so long as those findings are not inconsistent with those made at the original sentencing.").

Assuming without deciding that Judge Baer's statements were insufficiently specific as to drug quantity, a review of the record demonstrates by a preponderance of the evidence that Mr.

5

Garcia's offense involved a drug quantity greater than 450 kilograms, making him ineligible for a sentence reduction. *See Rios*, 765 F.3d at 139. At sentencing, Judge Baer credited the testimony at the trial of Mr. Garcia's co-defendants that "1,000 or 1,200 kilos of narcotics" were transported. Sent. Tr. at 26-27 (noting that "there was so much testimony about that during the course of the trial and the trips that the informant took"); *see also Garcia*, 167 F. App'x at 260-61 (affirming sentencing court's reliance on cooperating witness's trial testimony). He further explained that the guidelines level of 150 kilograms was "minimal in [Mr. Garcia's] case." Sent. Tr. at 26-27. The un-objected to PSR similarly references the cooperating witness's testimony that the cooperating witness "made between 12 to 15 trips transporting cocaine for Juan Garcia and [a co-defendant] to the New York/New Jersey area, and had transported more than 1,000 kilograms of cocaine on these trips, which began in January 2003." PSR ¶ 14; *see also id.* at 16-17 ("In the instant offense, the defendant served as one of the organizers of a large-scale narcotics organization. . . . A cooperating witness stated that he made between 12 to 15 trips and transported more than 1,000 kilograms of cocaine."). Defense counsel made no objection to the factual statements of the PSR. Sent. Tr. at 9.

Defendant's reliance on *United States v. Melendez*, 679 F. App'x 68, 70 (2d Cir. 2017), to argue that a "specific factual finding" is required is unavailing. *See* Dkt. No. 252 at 4. In *Melendez*, the Second Circuit held that the district court erred by determining, as a matter of fact, that the sentencing court found the defendant responsible for 44.8 kilograms of heroin, the quantity stated in the PSR. 679 F. App'x at 71. That sentencing court merely noted that the guidelines in the PSR had been "accurately computed," and otherwise never "discuss[ed] the PSR, ma[d]e a specific determination of the drug quantity for which Lopez should be held responsible, or indeed refer[ed] to drug quantity at all." *Id.* at 70. As detailed above, Judge

6

Baer's crediting of the cooperating witness's testimony and the PSR's findings as to drug quantity easily distinguish this case. *See United States v. Williams*, 00 Cr. 1008 (NRC), 2019 WL 5791747, at *3 (S.D.N.Y. Oct. 17, 2019) (relying on trial testimony to conclude that "the quantities of crack and cocaine involved in William's offense far exceed the relevant thresholds under Amendment 782"); *see also United States v. Pressley*, 03-CR-297-2 (NGG), 2017 WL 3701854, at *6 (E.D.N.Y. Aug. 25, 2017) ("While the court did not make an explicit weight determination or expressly adopt Probation's findings in the PSR, the sentencing transcript confirms that the court unequivocally credited the testimony of Defendant's co-conspirators at Price's trial."). Accordingly, because the record supports that Mr. Garcia's offense involved more than 450 kilograms of cocaine, the applicable Guidelines range is unaffected, and he is ineligible for a sentence reduction.[2]

Even if this Court were to determine that Mr. Garcia was eligible for a sentence reduction, it must also conclude that a reduction is appropriate considering the Section 3553(a) factors. 18 U.S.C. § 3582(c)(2). However, for the reasons stated below in the Court's analysis of Mr. Garcia's motion for compassionate release, the Court concludes that the Section 3553(a) factors do not support a reduction in this case.

### b. Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)

Defendant also moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). "Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United*

---

[2] The Court is also unpersuaded by Mr. Garcia's argument that another defendant in a separate case was granted a sentence reduction without Government objection. *See* Dkt. No. 257 at 2. Without any support, Mr. Garcia contends that this individual was involved in the same drug trafficking conspiracy. *Id.* In any event, the record clearly supports finding that more than 450 kilograms were involved in Mr. Garcia's offense, who is the defendant before this Court.

*States*, 564 U.S. 522, 526 (2011) (internal citation and quotation marks omitted). The compassionate-release statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Under the First Step Act, defendants serving their sentence may move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020).

In order for a defendant to be eligible for a reduction of their term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), there must be "extraordinary and compelling reasons" warranting such a reduction. The Second Circuit held that the Sentencing Commission's policy statement §1B1.13 Note 1(D), which instructs that the power to determine what reasons are extraordinary and compelling remains exclusively with the Bureau of Prisons director, is no longer applicable. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Therefore, this Court may "independently . . . determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *Id.*

Moreover, presenting an extraordinary and compelling reason for release is only one of the requirements for a reduction in one's prison sentence under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020). The Court must also determine that granting release is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission to determine if release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). In particular, the Court must consider whether a

8

reduced sentence would still "reflect the seriousness of the offense . . . promote respect for the law . . . provide just punishment for the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

Defendant argues that "[t]he unduly harsh nature of [his] incarceration during the COVID-19 pandemic, as well as [his] serious pursuit of rehabilitation" warrant extraordinary and compelling reasons for his compassionate release. Dkt. No. 252 at 6. The Court concludes that the Defendant has not established the existence of an extraordinary or compelling reason that warrants compassionate release.

The Court continues to be sensitive to the dangers and hardships posed by the COVID-19 pandemic on incarcerated individuals.  But as this Court has previously noted, "restrictions on visitation or other pandemic-related measures taken by prisons will not amount to extraordinary circumstances for most defendants who have recovered from or been vaccinated against COVID-19." *United States v. Cardenas*, No. 17-CR-339 (AJN), 2021 WL 3722761, at *3 (S.D.N.Y. Aug. 23, 2021).  Mr. Garcia is not "the rare case in which the pandemic will amount to extraordinary circumstances for a defendant who does not face heightened medical risks from COVID-19." *Id.* Defendant does not argue that he suffers from any underlying health issues that would increase his risk for severe complications.  On the contrary, Defendant contracted COVID-19 during the early days of the pandemic and has since recovered. Dkt. No. 252 at 3.  Mr. Garcia briefly mentions issues with recurring headaches and one instance of bloody stool.  Dkt. No. 252 at 3. While the Court accepts Mr. Garcia's representations of his medical history, he has not shown "that FCI Lompoc lacks the ability to manage his health concerns during the remainder of his sentence" such that these issues warrant an extraordinary and compelling reason for his release.

*United States v. Welsh*, No. 18 Cr. 4219-LAB, 2020 WL 5230533, at *2 (S.D. Cal. Sept. 2, 2020).

Moreover, Mr. Garcia has since been vaccinated. "[T]he circumstances of the pandemic weigh less heavily on the balance of the § 3553(a) factors for inmates who have recovered from or been vaccinated against COVID-19 and are thus less likely to be infected again in the future." *United States v. Nieves*, No. 12 Cr. 931 (AJN), 2021 WL 3494820, at *2 (S.D.N.Y. Aug. 8, 2021); *see also United States v. Rodriguez*, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) ("[That Defendant] has already apparently recovered from COVID-19 and has few risk factors for severe illness means that the risks of continued incarceration are lesser for him than for many other inmates.").

Mr. Garcia also briefly argues that if released he would help his sisters in caring for his two elderly parents, including his father who is remission from colon cancer. But "it is relevant, if not dispositive, that [defendant's parents] do[] not appear to depend exclusively on [defendant] for care at this time." *United States v. Yoda*, No. 15-CR-95 (AJN), 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020). And while the Court commends Mr. Garcia's efforts at rehabilitation, *see* Dkt. No. 252 at 5-6, considering the other factors, the Court concludes that Mr. Garcia is not able to satisfy the high bar of proving that an extraordinary and compelling reason warranting compassionate release exists.

Even assuming Defendant had established extraordinary circumstances, however, the sentencing factors in 18 U.S.C. § 3553(a) would counsel against granting Defendant's requested relief, both pursuant to Section 3582(c)(1)(A) and Section 3582(c)(2). *See* 18 U.S.C. § 3582(c)(1)(A) (noting that if the court finds extraordinary and compelling reasons warranting relief, it shall consider "the factors set forth in section 3553(a) to the extent they are applicable");

18 U.S.C. § 3582(c)(2) ("[T]he court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable . . . .").

Defendant highlights several factors that he argues warrant his release, including his post-sentence rehabilitation, his relatively light and non-violent disciplinary record while incarcerated, and the family support he would receive if released. The Court again commends Mr. Garcia's efforts at rehabilitation, but these are only a few of the many factors under § 3553(a) that the Court must consider. Defendant further notes that his co-defendant—who the district court also described as a leader of the organization—was sentenced to 235 months and has already been released from prison. Dkt. No. 252 at 2. The trial testimony that Mr. Garcia recruited the cooperating witness into the organization and maintained the stash house and that Mr. Garcia committed the offense while on probation are reasonable bases for these differences. *See United States v. Al Kassar*, 850 F. App'x 815, 817 (2d Cir. 2021) ("[T]he defendant in Bout received an overall sentence of 300 months, which is not greatly disparate from Al Kassar's 360-month sentence."). In any event, the Second Circuit has "repeatedly made clear that section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013) (internal quotation marks omitted).

Mr. Garcia further argues that his offense "did not involve violence." Dkt. No. 252 at 6. But as Judge Baer highlighted at Mr. Garcia's sentencing, Defendant was the leader of a drug organization that transported a significant amount of cocaine and the offense was "very serious." Such facts "weigh heavily against granting relief." *See United States v. Thomas*, No. 13 Cr. 360 (AJN), 2021 WL 4095257, at *2 (S.D.N.Y. Sept. 8, 2021) (denying release where defendant "played a lead role in a conspiracy to ship 80 kilograms of cocaine worth millions of dollars into

11

the United States" (internal quotation marks omitted)); *see also United States v. Fernandez*, No. 12 Cr. 844 (AJN), 2020 WL 3034799, at *3 (S.D.N.Y. June 5, 2020) (finding that "denying compassionate release is necessary" where "the Defendant played a significant role in trafficking a very large amount of cocaine in a relatively short period of time"). In carefully considering the factors and the extensive evidentiary record, Judge Baer imposed the lowest end of the Guidelines sentence, of which Mr. Garcia has more than a year left. *See United States v. Martinez*, No. 12 Cr. 862 (AJN), 2020 WL 2079542, at *3 (S.D.N.Y. 2020) ("Granting Martinez's compassionate-release motion, when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors."). The Court also considers that Mr. Garcia continued the drug operation after law enforcement seized a significant sum of drug proceeds in 2004. *See* PSR ¶ 17; *Fernandez*, 2020 WL 3034799, at *2 ("The need for deterrence here is reinforced by the fact that the Defendant continued to engage in drug trafficking even after the Government raided his drug trafficking operation.").

On balance, the Court concludes that the § 3553(a) factors—including the need to account for the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence to criminal conduct—counsel against granting Mr. Garcia's motions. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).[3]

### III. CONCLUSION

For the reasons stated above, Defendant's motions for compassionate release and a sentence reduction are DENIED. This resolves Dkt. Nos. 232, 239, 242.

---

[3] Because the Court concludes that Mr. Garcia has not established an extraordinary and compelling reason for his compassionate release and that the Section 3553 factors weigh against granting relief, the Court need not address the Government's argument that Mr. Garcia failed to establish that he "is not a danger to the safety of any other person or to the community." Dkt. No. 234 at 4 (quoting U.S.S.G. § 1B1.13(2)).

SO ORDERED.

Dated: January 26, 2022
       New York, New York

_____
ALISON J. NATHAN
United States District Judge